The next case up for argument is Hobus v. Howmedica Osteonics Corp. Good morning, your honors, counsel, Bob Miller for the plaintiff and the appellant here. I would like to reserve the five minute rebuttal time and I would like to then explain in a The motion judge in this case disqualified two, well, one and a half of our experts. The first expert that was disqualified is the treating doctor, the surgeon that did the surgery on the back of the plaintiff and installed the device that is claimed to be defective. The, obviously the briefs are pretty well on point and agree that the standards that apply to this issue are the Rule 702 and the Daubert follow-up rulings regarding the use and qualifications of an expert witness. It seems that when looking at the rule, it's very simple. The rule starts out by saying if an expert can be used to help understand the evidence or determine or help determine facts, that expert should be allowed. It also says that... Well, counsel, let me ask you this. I mean, I'm not, I'm not unsympathetic to the fact that, with a, this is Dr. Johnson you're talking about, with a trained clinician like Dr. Johnson, normally it should be a question of weight rather than admissibility, but the district court's role in being a gatekeeper has to mean something and here you proffer Dr. Johnson to testify as to the issue of causation. So I think the district court was right to focus on whether there's a generally accepted methodology. So what do we do with the fact that Dr. Johnson himself admitted that he really doesn't have a methodology for reaching his conclusions? What's the district court supposed to do with that? Well, the definition of what is a methodology, he has explained what he has done in his practice, what considerations there, that he used to make his decision. Well, but he says here, I don't have a methodology. I just have my instincts as a clinician. That's not a generally accepted methodology for reaching the causation question. But that... And he has experience in the operating part of it and I think he can rely on his experience with the patient to talk about how those things are conducted. But to testify as to causation, you've got to show more than that, don't you? He has to give an opinion as to the causation, which he has done. Right, but what's that opinion grounded on? Well, it is grounded on his personal experience and his treatment of the patient over the years. But he didn't say that when asked how he reached his conclusion, did he? I think he did. He did in the latter part say that I've reached this... Point me to the part of the transcript where you think he provided an explanation? Where in the record did he provide the explanation of how he reached his conclusion? I think he summarized what he took into consideration when reaching his conclusion. He did not specifically identify what x-ray he looked at. He didn't get into that detail. He used a summary conclusion saying, I've treated this patient over the years. I've looked and based on my experience as a physician, I've rendered my opinion. Right. I understand he gave an opinion and the question was, how did he reach it? And the problem that we're facing is when he was asked how he reached the conclusion, he said, it's just my sense. It's just my gut. I don't have a methodology. So he needed to provide some explanation. I mean, we have case law saying it can't just be a subjective say-so. So reviewing under the abuse of discretion standard here, why was that an abuse of discretion for the judge to say when the physician himself said, I don't have a methodology? Well, two things. One is that he did reach an opinion based on the treatment of the patient and his experience over the years. That's what experts do. They're not going to be able to identify specifically everything they took into consideration. What was the basis? Did he reach the conclusion that it was this cage device that caused his injury? I'm sorry, I didn't understand, Your Honor. I say, did this doctor reach a conclusion that the device involved caused the plaintiff's injury? Yes, he did. And what was the basis of that opinion? Just his treatment? The basis? I mean, he said something like, well, I treated him so I know what the cause is. Something like that? He did. There's nothing more than that, is it? Nothing more specific than saying it is my opinion that because of the failure of the device, that was a substantial cause in his continued problems. And in coming to that conclusion, was he able to articulate or did he explain why this patient, this person's other problems, and he has a long history of problems here, were not the cause? He didn't try to even explain that, did he? No. What he did was he explained that because of the failure of the device, that was a substantial factor in causing the plaintiff's current condition. And he based that on his treatment of the patient over the years and his expertise as a physician, a highly qualified physician. And even if there is room to attack, that is supposed to be done through the cross-examination or the impeachment through other means, but not the exclusion as an expert witness. Well, the district court does have the gatekeeping duty of determining whether or not the expert opinion has enough of a proper foundation even to be admissible, right? I would agree with that. But this is what the judge in this case, she reviewed the facts, she weighed different facts, and then she reached conclusions. And that is not something that she is supposed to be doing. Well, in a fair reading of the decision, the decision is initially grounded in the fact that Dr. Johnson, when asked what his methodology was, he said, I don't have one. It's just my gut instinct. So the way I read the district court's decisions, then they sort of go out of their way to consider your argument that you're raising today, which was just stating that was enough because it was impliedly based on his clinical treatment of the patient. And it's in the course of responding to that argument that she considers the treatment records. But the decision is initially grounded in his deposition testimony, isn't it? I don't know that the decision that she made was grounded on that response. What she was looking at were different factors and different points, such as the MRI that was taken in 2017 did report that the device appeared to be in the location it was when it was implanted. But that has turned out to be incorrect. And she does note that in a footnote that we now know that what happened was they later did find that this device had failed within six months after it had been implanted. So she was weighing the different options of those findings, and then she was making a conclusionary ruling, the ruling that a jury is supposed to make. And that's where we're saying that that's not proper. I know you wanted to save some time. Yes. Thank you. May it please the court. My name is Nick Deutsch. I'm here on behalf of Appley Helmetica Osteotics Corp. The district court did not abuse its discretion in excluding the opinions of Dr. Johnson and Mari Truman. The district court's conclusion was neither illogical nor implausible nor contrary to the record. With respect to Dr. Johnson, as the court has noted, Mr. Hobus could not establish that Dr. Johnson employed a reliable methodology when Dr. Johnson himself denied having any methodology at all. He instead relies on his instincts as a clinician, but his clinical opinion, his medical opinions in this case, were different than his ultimate expert litigation opinions. And so there needs to be a methodology to explain that change. Nor did the district court abuse its discretion in finding that Mari Truman did not reliably apply her methodology to the facts of this case. She set forth a standard and noted a specific test to confirm compliance with that standard, yet testified that she did not know whether the device at issue met that standard and did not conduct the testing that she proposed to determine if her hypothesis was correct. Without causation or defect testimony, it's undisputed that appellant cannot survive summary judgment and there is therefore no error. Your opposing counsel's argument seems to be that yes, even though Dr. Johnson did say that he didn't have a specific methodology other than his clinical experience, as the district court acknowledged, expertise can come from experience, right? So here you have a doctor who's been a neurosurgeon for, I think, since the 90s and he's not, this is not the first time that he's used this particular device in a patient and he hasn't had a patient who's experienced this failure. And then he references radiographic evidence to, I guess, shore up his conclusion that it must have been, that it must have been the cage that contributed to the fact that the patient needed a second surgery. So why isn't that a weight issue where you get to counter with your own expert and you get to argue, well, that's speculative because he hasn't had another instance of a patient with a cage implanted that's failed? There's an initial threshold of admissibility that the court must first establish. And here the court, the court can consider expertise and as a clinician, does he have that expertise? But as the district court noted, Dr. Johnson did not have any experience at all with a cage collapse. And he's been offered, in this case, to offer opinion testimony about the cause of that cage collapse and the effect of that cage collapse, which he has no experience with at all. Further, he, the methodology of how he gets there is the critical factor that the court is supposed to be considering. And when he says he doesn't have a methodology, the inquiry stops there. We can't examine his methodology when he denies having a methodology at all. Did you have a counter expert? And if so, what was the conclusion on the cause of this failure or why he needed to have another surgery? The, so there is another expert in this case. We had an expert and that expert opined that some of the original conditions were the cause of the continuing pain, that there's been no change in the pain and that that has just continued same course. The surgery was just not effective. In suspect that Hobus's pain issues are much larger than what we dealt with with his back surgery. He said that there's no cord compression or nerve impingement. He says, I think this is just a poor outcome from surgery. Even after it was pointed out that the cage had collapsed, he said, I strongly suggest that this is not the source of Mr. Hobus's ongoing pain. He described it as being of questionable significance. He said he's unsure to what extent it accounted for Mr. Hobus's ongoing pain because such a finding would not automatically be expected to cause symptoms. I understand his deposition test when he would be after, you know, further treatment, he changed his view on that or that part of his questioning was how he counsels the patient. So taking that, that it wasn't necessarily undermining his own conclusion, but either that it reflected a different context and perhaps different conclusion at a different point in time in the course of treatment. I think there's, I don't think it's necessary. I mean, I think you could have cross-examined witness and tried to impeach right on those grounds, but it doesn't, I don't think that evidence in and of itself means that his conclusion was, you know, I think that would be for a jury to decide what the significance of his earlier statements were. But that's where I think there's, in my opinion, the closest issue was that that's arguably impeachment evidence that would have been dealt with on cross-examination versus going to his qualifications as an expert. The change in his opinion may not in and of itself disqualify him as an expert, but it needs to be explained. What, and where, do you have case law on that or is that just an argument under the circumstances of this case? Under, under Kumo itself, we've got, we're trying to establish that the expert employees in the courtroom, the same level of intellectual rigor that characterizes his practice outside of the And so here, when you've got that intellectual rigor actually tested outside of the courtroom, this is what he did outside of the courtroom. And now we're offering a different opinion inside of the courtroom. We need an explanation of the methodology as to how he got there. And that's what's lacking in this case. He was asked about this specifically and said, I don't have a methodology. There's no methodology, sir. I'm sorry. Repeatedly having any methodology at all. That's the causation piece. On the defect piece, Mr. Hobus propounded the testimony of Mari Truman. Mari Truman said that there should be a 2000 Newton standard for testing this device. But she said she doesn't know whether the device could actually pass that standard. She doesn't know what forces were actually placed on the device implanted in Mr. Hobus as to whether that standard would actually have worked in Mr. Hobus's case. She doesn't know whether any expandable cage on the market withstands this 2000 Newton standard that she set in place. And she does not know if it's feasible to design an expandable cage that withstands 2000 Newtons of force. So she set a standard. She's identified testing for that standard but is not able to tell us whether the device at issue in this case meets or exceeds that threshold standard, nor did she conduct the testing that she identifies would need to be done to confirm compliance with that standard. She also offers a warning defect opinion. She says, first, there's no specific notice of the risk of collapse. She concedes, though, that the risk of collapse is obvious. This is also consistent with Dr. Johnson's opinions that he was aware of the risk of collapse. And in going through the instructions for use, the risk of collapse actually was warned about. And so Ms. Truman said, actually, there should be specific weight and activity level limitations in the instructions. But she said, I don't know what those limitations should actually be. We would need more testing to determine what weight and activity limitations would be appropriate. The instructions already have a general instruction that the patient's weight and activity levels need to be considered. There's just not a specific amount or number in there. And Ms. Truman could not propose a specific amount or number either. Now, because we're under Rule 702, I think it's important to note that the District Court correctly applied the existing standards of Rule 702, this is Federal Rule of Evidence 702, which have always required that expert testimony be relevant and reliable. But the District Court's approach is further bolstered by the recent amendments to Rule 702. They were approved by the Supreme Court and promulgated to go into effect December 1st of 2023, so just about a year ago. The rule addressed two frequent errors in jurisprudence across the country that the advisory committee had noted. The committee said, first, the committee resolved to respond to the fact that many courts have declared that the reliability requirements set forth in 702 B and D, this is the adequate facts, and then applying the methodology to those facts. That the expert has relied on sufficient facts or data and has reliably applied a reliable methodology are questions of weight and not admissibility, and more broadly, that expert testimony is presumed to be admissible. The committee said these statements misstate Rule 702 because its admissibility requirements must be established to a court by a preponderance of the evidence. So the Rules Committee promulgated this new rule, took public comment, took comment from the bar, from the bench, got more than 500 comments, and almost all of them focused on the preponderance of the evidence language that it was adding to the rule. Some people said preponderance of the evidence suggests that the evidence must be admissible. Others said that this changes the role of the judge to that of the jury as the fact finder. The committee said, took those into consideration, said we're not concerned with the admissible evidence portion because the rule is clear, the court can consider inadmissible evidence, but we're going to change it. Instead of referring to preponderance of the evidence, we're going to say more likely than not. We'll take evidence, the word evidence out. But secondly, and more importantly for our purposes, the committee was not concerned about the shift to the jury function, and it said for the simple reason that when it comes to making preliminary determinations about admissibility, the judge is and always has been a fact finder. The Rules Committee also clarified that it's the court, not the jury, that must decide whether it's more likely than not that the reliability requirements of the rule have been met. And so the committee notes to the rule itself say that it's been amended in two respects. One, to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it's more likely than not that the proffered testimony meets the admissibility requirements of the rule, and goes on to say, this is in the notes to the rule itself, but many courts have held that the critical questions of the sufficiency of the expert's basis, the applicability of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rule 702 and 104a. And so now we have the Supreme Court, through its rulemaking authority, saying the district courts need to consider the factual basis for the expert's opinion and to confirm that the methodology is properly applied to the facts of the case, that the court itself needs to make these findings and needs to do so by a preponderance of the evidence. Also emphasize that judicial gatekeeping is essential because jurors are unable, because they don't have the specialized knowledge, to evaluate the reliability of scientific methods and underlying, and other underlying expert opinions. But also jurors may lack the specialized knowledge to determine what conclusions of an expert go beyond what the expert's basis and methodology may reliably support. So the rule change emphasizes that the application of the methodology to the facts is really where attention needs to be given. Judge Schroeder, the chair of the advisory committee subcommittee on Rule 702, said the elements of Rule 702, not the case law, are the starting point for the requirements of admissibility. And so this rule had been promulgated, hadn't gone into effect, but had been promulgated. It's important to note the rule says nothing in the amendment imposes any new or specific procedures. The amendment is simply intended to clarify that Rule 104a's requirement applies to expert opinions under Rule 702. So even under the case law where the district court's role is merely to screen junk science and nonsense opinions, the court did not abuse its discretion in this case. But the amendment to the rule confirms that Federal Rule of Evidence 702 does require more. And certainly under that standard, the court has not abused its discretion. Thank you. Thank you, counsel. Just a minute. Could I ask a question? Yes. Okay. Let me ask, I just want to get some notes on the structure of your appeal here. One, if we agree with you that the district court did not abuse its discretion in excluding Dr. Johnson's opinion, then that's sufficient to uphold your summary judgment, isn't it? That's correct. There's no dispute on that issue. All right. Now, so then we don't need to consider this business about the partial exclusion of, what's her name, Mary Marie Truman's opinion, do we, in that circumstance? The exclusion of either expert is sufficient to uphold summary judgment. That's correct. All right. So then we would have to consider the ruling on the exclusion of the Truman opinion only if we disagree with the district court that it should have excluded the Johnson opinion. Is that right? No, we don't have to. We don't have to rule on both of those, do we? Either one's sufficient. That's right. I mean, to uphold your summary judgment. Either one is sufficient to uphold summary judgment. That's correct. Right. Because without those, you know, there's a plaintiff can't make her case, his case, right? Right. As to causation, Oregon law requires expert testimony where there's a complex medical question. And as to defect, Oregon has a statute where there's a rebuttable presumption against defect. So under either causation or under both causation and defect, expert testimony would be required in either one. The exclusion of either expert would be sufficient to uphold summary judgment. All right. Thank you. Thank you. Thank you, counsel. Thank you. Just a few points. First of all, counsel brought up the difference between a clinical expert and an expert for review of the file and testimony at trial. Dr. Johnson fell into both of those categories. So when Dr. Johnson describes his opinion, he said as a medical expert, this is my opinion once I have reviewed the whole case and I have looked at all the evidence in the record. And he gave that as his opinion. And he described and defined what his methodology was, although he didn't understand that you have to list some type of function to be included as the methodology that he used. He said that he went about, he described that he used his experience over the years. He used the entire record. He considered all the factors that are involved. That is all methodology, although he didn't describe that as methodology. The other argument that this is the first collapse device that Dr. Johnson has would disqualify him from rendering these opinions. Certainly, that is not a logical conclusion for this court to draw because then you could never bring a case, if it was a case of first impression, on a product that just because it's the first time they've been sued does not mean you cannot bring a lawsuit against them if the evidence is there. The explanation of the doctor's opinion was he explained and explained through the procedure of case why there was difference in seeing that at the time there was MRIs done in or scans done in after the first surgery, that they were still having difficulty trying to figure out what went on. And that is because they didn't know that the cage had collapsed at that point. The cage moved very slightly, but it was enough to collapse and migrate from the position. But it wasn't large enough that the radiologists that are reading the x-rays after the surgery were able to identify by just looking at the surgery. That's why there were a number of reports that said, that say, it appears that the device is still in place, but when in fact it had not. And so until they went in in December, the month before the surgery at the end of 18, and did thorough x-rays again, were they really convinced at that point that the device had collapsed? So there's a logical explanation for why there are many of those reports in the record. Counsel, just because you're running out of time, can you address your other expert witness? Because if either was excluded, do you agree if either was excluded properly, summary judgment should be affirmed? I would not. I think the case can still be brought even if part of Dr. or Mari Truman's summary judgment is upheld. The case can still be brought in the remainder of her testimony, which the judge qualified her and agreed that she was qualified to testify. But did you have other evidence of causation besides Dr. Johnson? No, Dr. Johnson we would not. This is the only witness on causation. That's correct. And I would agree that if the court finds that Dr. Johnson cannot testify, then there would not be, correct, there would not be reason to look at Truman's issues. I don't think we should be considering the rules that were not in effect back when this case began. And we just have to, I think when we're looking at this case, remember that we've never had a chance to even qualify or have our Dr. Johnson testify under direct examination and go through the process of qualifying him as an expert and then explaining the complete situation. And that's what is critical. Thank you, counsel. Judge Tashima, did you have any additional questions? No, thank you. All right. Thank you both for your argument today. The matter is submitted.
judges: TASHIMA, NGUYEN, SUNG